CENTRAL TRUST CO. OF NEW YORK v. GEORGIA PAC. RY. CO.

BROOKS et al. v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Fifth Circuit. April 12, 1898.)

No. 644.

CONTRACTOR'S LIEN ON RAILROAD PROPERTY—FORECLOSURE SALE SUBJECT TO LIEN—RIGHTS AND LIABILITIES OF PURCHASER.

Interveners recovered judgment for $10,000 in a state court, and a decree that it be a lien on that part of the railroad and right of way embraced in their construction contract, which lien they seek to enforce in the foreclosure case. The decree of foreclosure in the main case provided that the purchaser should take the property upon the express condition that he would pay all claims which should be adjudged by the court to be prior in lien to the mortgage foreclosure, and this provision was preserved in the decree confirming the sale. The master found and reported, after the sale, that interveners have a lien, as established by the decree of said state court, which is superior to the lien of the mortgage foreclosure, only as to the improvements placed by them on the railroad right of way; that it would be destructive of the interests of the defendant railway company, of the interveners, and of the purchasers to allow such improvements to be detached from the premises; that they should have been and were sold together, and the reasonable value of the improvements has passed ratably into the common fund. The master's report was approved by the court. *Held* that, a lien having been found, the purchasers had no right to contest its limits or extent on the railroad property, and it was immaterial whether it covered any specific structures or other integral part of the railway. Interveners were entitled to a decree ordering the purchasers to pay the amount of their judgment, with interest thereon from the date of its recovery in the state court.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Frank A. Critz and R. C. Beckett, for appellants.

John T. Glenn, John M. Slaton, and Benj. Z. Phillips, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PARDEE, Circuit Judge. This is an intervention to enforce a mechanic's lien in the main case, which is a foreclosure suit brought by the Central Trust Company of New York, trustee in a mortgage of May 1, 1888, against the Georgia Pacific Railway Company. The interveners allege that on June 8, 1888, R. M. and J. M. Brooks made a written contract with the Georgia Pacific Railway Company to do all their earthwork, woodwork, clearing, and grubbing in the construction of 11 miles of its railroad, from sections 40 to 50, inclusive, in the counties of Clay, Oktibbeha, and Webster, in the state of Mississippi; that they commenced work about June 23, 1888, under this contract, and worked until November 14 or 15, 1888, doing a very large proportion of work, and furnishing a very large amount of the material for the woodwork, on said 11 miles, for a large part of which work and material the railway company failed to pay; that on November 28, 1888, said R. M. and J. M. Brooks commenced a suit in the chancery·court of Oktibbeha county, Miss., to enforce their mechanic's lien under the laws of Mississippi against said railway company, and on November 15, 1893, the said court rendered a final decree in their favor for the balance due of $10,000 and costs, amounting to $895.88, and decreed that the same be a lien on that part of the railroad and right of way embraced in their contract, which lien, by an amended decree on April 28, 1894, was extended so as to cover all the railroad in Mississippi; that part of the railroad from Atlanta, Ga., to Columbus, Miss., had been completed and in operation several years before the date of the trust deed of May 1, 1888, but no part of the railroad from Columbus west to Johnsonville, Miss., a distance of 140 miles, had been built at that date; that the trust deed to the Central Trust Company provided for the building of this 140 miles, and also provided that the bonds secured by the trust deed could be issued on each section of 10 miles when completed, but not before; that interveners have a lien under the Mississippi statutes upon all of said railroad in Mississippi for said $10,000, with interest at 6 per cent. from November 15, 1893, and all costs; that said lien is superior to, and entitled to priority over, any and all bonds issued under and by reason of said trust deed; and that the holders of said bonds, or any part thereof, are in no sense bona fide purchasers or holders so far as interveners are concerned. The intervention, in suitable averments, contains, besides the above, all the specifications necessary to a full understanding of the case presented. The interveners pray, among other things, that the Georgia Pacific Railway Company. the Central Trust Company, and the receivers be made parties: that the court would require said decree of the chancery court of Oktibbeha county, in the state of Mississippi,

to be paid in full, according to the directions therein contained, out of the income of said railway in the hands of said receivers, or out of the proceeds of said property; and that said decree be given priority over all said bonds, and be paid off in full, including interest and costs, before anything is paid upon said bonds or upon the interest due upon said bonds. This intervention was filed in the clerk's office June 8, 1894, and was ordered by the court to be treated as an intervention as of that date. On August 18th the Central Trust Company of New York and the Georgia Pacific Railway Company and the receivers acknowledged service of the intervention, and consented that the matter should be referred at once to a master, whereupon, on the same day, the court ordered that the intervention be referred to W. D. Ellis, special master, to hear and report upon the same.

On the 26th of March, 1894, a decree of foreclosure was entered in the main case, directing the sale of the Georgia Pacific Railway, to satisfy the principal and interest of the bonds secured by the trust deed to the Central Trust Company of May 1, 1888, and therein, among other things, it was provided as follows:

"The purchaser or purchasers at said sale shall, as part of the consideration for such sale, take the property purchased upon the express condition that he or they, or his or their assigns, approved by the court, will, notwithstanding, pay off and satisfy any and all claims filed in this case, but only when the court shall allow such claims, and adjudge the same to be prior in lien to the mortgage foreclosed in this suit, in accordance with the order or orders of the court allowing such claims, and adjudging with respect thereto; but this provision shall not be in any manner applicable to the rights and claims of the complainant, as trustee under the said first mortgage of May 6, 1882, or of the trustee under said mortgage of October 1, 1883, or of the complainant, as trustee, under either of the equipment sinking fund mortgages; and the purchaser or purchasers or their approved assigns shall be entitled to appeal from any and all orders or decrees of the court in this respect to such claims, or any of them, and shall have all the rights in this respect to such appeals which the complainant Central Trust Company of New York would have in case such appeals had been taken by it."

The sale under the decree occurred on August 18, 1894; and the solicitors for the interveners appeared at the sale, and gave a written notice to bidders of the claims of the interveners. The mortgaged property was adjudicated to Charles H. Costa and Anton H. Thomas, purchasing committee for the Southern Railway Company, for the sum of $500,000, and the decree of confirmation recites as follows:

"And it appearing by the report of the special master that such purchasers have fully complied with the directions of said decree as to the sale of the said property, and that such purchasers were the highest and best bidders for such railroad property and franchises, and that the same was struck off to them for the sum of five hundred thousand dollars ($500,000), subject, however, as recited in said decree, to the mortgages, receivers' debts, and other preferential liens and claims, and to all and singular the terms and conditions in said decree set forth, and that such purchasers have made the payment thus far obligatory upon them, and it being shown to the satisfaction of the court that the recitals in the report of the special master are true, and no cause being shown against such report; * * * and the court further reserves full power from time to time to enter orders binding upon the said Southern Railway Company and the said Southern Railway Company in Mississippi, as such purchasers under its decree, requiring them to pay into the registry of this court all such sums as have been, or may be, ordered by

this court for the payment of any and all receivers' debts or claims adjudged, or to be adjudged, by it as prior in lien or equity to the mortgage foreclosed in this cause, or entitled to preference in payment out of the proceeds of sale prior to the bonds secured by the said mortgage. of the Georgia Pacific Railway Company."

On November 3, 1894, the following written agreement was filed in the case, and submitted to the master:

"We hereby withdraw the demurrer heretofore filed to the intervening petition of said J. M. Brooks, surviving partner, et al., in the above-stated case, and admit the statements of fact contained in said petition to be true. We agree that Exhibit A to said petition is a true copy of the contract between the Georgia Pacific Railway Company and R. M. and J. M. Brooks, under which the work was done for which allowance is claimed in said intervention; that Exhibit B to said petition is a true copy of the original decree; and Exhibit C to said petition is a true copy of the amendment of said decree in the case of R. M. & J. M. Brooks et al. vs. the Georgia Pacific Railway Company, in the chancery court of Oktibbeha county, Mississippi, as stated in said petition: and we further agree that said Exhibits A, B, and C may be used as evidence in the trial of all issues presented by said petition without further authentication or proof of said exhibits. It is further admitted that on the 18th day of August, 1894, Frank A. Critz, as solicitor of said interveners, in the city of Atlanta, Ga., at the time and place appointed for the sale of the Georgia Pacific Railway in the decree in the above-stated case, and at the sale of said railway under said decree, before any bid was made by the purchaser at said sale, read in the presence and in the hearing of said purchaser notice of the claim of said interveners, and of said intervention, as shown by said written notice filed in this case on said 18th day of August, 1894; and it is agreed that said written notice, with the indorsements thereon, may be used as evidence in the trial and disposition of said intervention. The Mississippi statutes referred to in said petition need not be pleaded more fully. The above agreement, however, is made subject to the right, which is hereby expressly reserved, to object to any and all matter offered as evidence which may not be material and relevant to this issue in this intervention.

"Signed this November 3rd, 1894.          James Weatherly,
   "Sol'r for Ga. Pac. Railway, and Southern Rwy. Co., Purchaser.
                              "Henry Crawford,
                                   "Sol'r for Same Parties."

After hearing the parties, the special master, on the 7th of May, 1896, filed a very exhaustive and well-considered report, concluding as follows:

"The special master finds and reports as follows: (1) That the interveners, as contractors, have a lien set up and established by the decree set forth in the record of this case, which is superior to the lien of the bondholders only as to the improvements and erections placed by them on the railroad right of way. (2) That the lien of the bondholders is superior to the lien of the interveners upon the realty composing the right of way and substructure of the railroad, as distinguished from anything like depots, bridges, cross-ties, culverts, or rockwork which the interveners may have furnished and erected. (3) The proof does not show what work, improvements, or erections the interveners did on the line of road covered by their contract with sufficient detail or certainty or value to authorize any finding in their favor for any particular amount, and therefore the special master is forced to find against their claim as presented and proven in the proceedings in this case. (4) The special master finds that it would be destructive of the interests of the defendant railway company, and of the interveners, and of the purchasers, to allow the improvements, whatever they were, erected by the interveners, to be detached or moved away from the premises; and therefore they should have been and were sold together, and whatever was the reasonable value of such improvements and erections has passed ratably into the common fund. (5) The railway east of Columbus, Miss., was not subject to the lien

of the interveners, and therefore should not be taken into account in estimating the pro rata value of the improvements and erections made by the interveners."

The scope and effect of this report do not seem to have been fully understood by the counsel for the interveners, for they filed elaborate exceptions to it, and thereafter sought to amend their intervention, presenting new matter and new questions, all of which resulted in a dismissal of their intervention (83 Fed. 386), from which they appeal to this court.

The assignment of errors is very elaborate, and presents many questions which have been very learnedly and elaborately argued in this court; but, under the view which we take of the case, many of these questions need not be considered. The master finds and reports that the interveners have a lien, as established by the decree of the chancery court of Oktibbeha county, which is superior to the lien of the bondholders as to the improvements and erections placed by them on the railroad right of way, and that it would be destructive of the interests of the defendant railway company and of the interveners and of the purchasers to allow the improvements, whatever they were, erected by the interveners, to be detached or moved away from the premises. Therefore they should have been, and were, sold together, and whatever was the reasonable value of such improvements and erections has passed ratably into the common fund. By the decree of foreclosure in the main case it is provided that the purchaser shall, as a part of the consideration for the sale, take the property purchased upon the express condition that he will pay off and satisfy all claims filed in court which should be adjudged by the court to be prior in lien to the mortgage foreclosed,—that is to say, prior in lien on the railway property to the rights of the bondholders under the mortgage of May 1, 1888; and this provision is substantially preserved in the decree confirming the sale. The report of the special master, finding the lien in favor of the interveners, appears to have been approved by the judge of the circuit court; and, for the elaborate and convincing reasons given by the special master, we think it was correct. And the same may be said of the fourth finding of the special master, to the effect that the improvements made by interveners should not have been detached or moved away, and that it was necessary and proper to sell the whole property together, the value of the improvements and erections passing to the common fund. This being the case, we are of opinion that, under the terms of the decrees of foreclosure and confirmation, the purchasers have no right, a lien being found, to contest the limits or extent of the lien on the railway property. Under the terms of sale, the interveners were deprived of all power to protect themselves by purchasing the property on which they had a lien, and they had a right to rely upon the provisions made for their protection in the decrees of the court, under which whatever amount should be adjudged in their favor as a lien the purchasers agreed to pay as a part of the consideration; and we conclude that it is now wholly immaterial whether the lien adjudged in favor of the interveners on a portion of the railway property covers specific superstructure, wood-

work, right of way, or any other integral part of the railway. This view of the case is fully supported by the principles declared and followed by the supreme court in Swann v. Wright's Ex'rs, 110 U. S. 590, 599, 4 Sup. Ct. 235, Trust Co. v. Newman, 127 U. S. 649, 659, 8 Sup. Ct. 1364, and Compton v. Jesup, 167 U. S. 1, 33, 17 Sup. Ct. 795, et seq., and disposes of this appeal.

The decree of the circuit court is reversed, and this cause is remanded, with instructions to enter a decree in favor of the interveners, J. M. Brooks et al., for the amount found by the master to be due upon their claim, to wit, the sum of $10,000, with interest thereon from November 15, 1893, until paid, at the rate of 6 per centum per annum, and the further sum of $895.88, costs of suit in the state court of Mississippi, and ordering the purchasers of the railway property to pay said amounts, together with the costs of the cause.